UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20113-BLOOM/Otazo-Reyes

KAREN A. CARR,

    Plaintiff,

v.

CARNIVAL CORPORATION.,
a Panamanian corporation, d/b/a,
CARNIVAL CRUISE LINE,

    Defendant.
_____/

## ORDER ON *DAUBERT* MOTION

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Defendant" or "Carnival") *Daubert* Motion, ECF No. [42] ("Motion"). Plaintiff Karen Carr ("Plaintiff") filed a Response in Opposition, ECF No. [48] ("Response"), to which Defendant filed a Reply, ECF No. [49] ("Reply"). The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part consistent with this Order.

### I. BACKGROUND

On January 11, 2021, Plaintiff initiated this lawsuit, *see* ECF No. [1] ("Complaint"), asserting the following claims for relief: Count I – negligent failure to maintain against Carnival; and Count II – negligent failure to warn against Carnival. *See id.* at 4-6. According to the Complaint, on or about October 13, 2019, Plaintiff was walking in the Lido Marketplace on Deck 4 of Defendant's vessel, near a coffee shop where food items were being consumed, when she slipped on a liquid or wet, slippery transitory substance and fell. *See id.* ¶ 13. As a result, Plaintiff

sustained serious injuries, including a displaced intraarticular four-part left distal radius fracture, which was surgically repaired. *See id.* ¶ 14. She later retained Francisco de Caso, Ph. D. ("De Caso") to analyze the safety of the surface on which she slipped and fell. *See* ECF No. [42-1]. On January 6, 2022, De Caso inspected the vessel and, in particular, the portion of the Lido Marketplace where Plaintiff fell. *See id.* at 1

In the Motion, Defendant requests that the Court exclude or limit the opinions and testimony of De Caso. *See* ECF No. [42] at 1. Defendant argues that (1) De Caso should not be permitted to offer the legal conclusion that Defendant had notice of the alleged risk-creating condition; and (2) De Caso should not be permitted to offer testimony on matters exceeding the scope of his expertise by opining on warnings signs and Defendant's housekeeping policy. *See id*. Plaintiff responds that De Caso will offer expert engineering opinions, not legal conclusions, and his opinions on warning signs and housekeeping policies do not exceed his expertise. *See* ECF No. [48].[1]

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the court must

---

[1] In the Reply, Defendant requests that the Court not consider Plaintiff's Response because Plaintiff did not file her Response by the applicable June 8, 2022 deadline. *See* ECF No. [49] at 4. However, the Court *sua sponte* permitted Plaintiff to file her Response by June 16, 2022, after Plaintiff failed to file her Response by June 8, 2022. *See* ECF No. [45]. Plaintiff filed her Response on June 15, 2022. *See* ECF No. [48]. As such, the Court will consider Plaintiff's Response.

2

engage in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *See id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. Jun. 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's

discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[2]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261-62 (citation and internal quotation marks omitted). To make this determination, the district court typically examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *See id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). The Eleventh Circuit has emphasized that the four factors above are not exhaustive, and a court may need to conduct an alternative analysis to evaluate the reliability of an expert opinion. *See id.* at 1262 ("These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion."). Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular expert's testimony is reliable. *See id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered before October 1, 1981.

explained." *See id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations and internal quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *See Rink*, 400 F.3d at 1293 n.7.

On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary

determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

### III. DISCUSSION

Plaintiff retained De Caso as an expert witness to "survey[], photograph[], and evaluat[e] the area of the subject incident including . . . the floor surface slip resistance properties, the floor condition, and other related factors that may have influenced the . . . slip and fall incident by Ms. Karen Carr." ECF No. [42-1] at 6. As noted above, Defendant challenges De Caso's opinions by arguing that: (1) De Caso seeks to offer the legal conclusion that Defendant had notice of the alleged risk-creating condition; and (2) De Caso seeks to opine on matters exceeding the scope of his expertise, namely the adequacy of warning signs and violation of Defendant's housekeeping policy. *See* ECF No. [42] at 2-3.

#### A. Legal Conclusions

Defendant first argues De Caso's statements, opinions, and testimony that Defendant was on notice of the alleged dangerous condition should be excluded as legal conclusions. *See* ECF No. [42] at 2-3.

Plaintiff responds that De Caso "meets the requirements of expert qualification, reliability of methodology, and helpfulness," and asserts that "his report [therefore] delivered expert engineering opinions, not legal conclusions." ECF No. [48] at 3-4. Plaintiff also notes that De Caso used prior incidents as evidence of the "deficient slip resistance of the floor surface." ECF No. [48] at 5 (citing ECF No. [42-1] at 17 ¶ 5.1.11). Plaintiff does not otherwise meaningfully address De Caso's argument that De Caso offers legal conclusions that are improper and not helpful.

The Court agrees with Defendant. An expert witness may testify as to his opinion on an ultimate issue of fact, but he "may not testify as to his opinion regarding ultimate legal

conclusions." *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014); *Zarfaty v. Garden Fresh Rest. Corp.*, No. 15-CV-60268, 2019 WL 8810306, at *3 (S.D. Fla. Oct. 30, 2019) ("[the expert] may not offer testimony with respect to Defendant's notice, either actual or constructive"). Furthermore, merely telling the jury what result to reach with respect to the issue of notice is unhelpful and inappropriate. *See Umana-Fowler*, 49 F. Supp. 3d at 1122.

In this case, De Caso's expert report states: "Carnival should have been aware of the high risk of slip and fall and resulting dangerous conditions caused by the deficient slip resistance of the floor surface." ECF No. [42-1] at 17; *see also id.* at 16 (opining that Defendant "had prior knowledge"), 22 (opining that "the hazardous slippery condition should have been known [to Defendant]"). Such opinions are legal conclusions regarding Defendant's constructive notice that improperly invade the province of the jury and are not helpful. *See Holley v. Carnival Corp.*, No. 1:20-CV-20495-BLOOM/Louis, 2021 WL 5371507, at *9 (S.D. Fla. Nov. 18, 2021) (holding that "opining on constructive or actual notice and assigning fault are legal conclusions that invade the province of the jury and are not helpful."). Accordingly, De Caso is precluded from testifying that Defendant "should have been aware" or "had prior knowledge" of the dangerous condition. ECF No. [42-1] at 16, 17, 22. Further, De Caso may not testify as to prior substantially similar incidents as they only pertain to De Caso's opinion that Defendant had notice and are not relevant to any opinion on slip resistance. *See* ECF No. [42-1] at 17 ¶ 5.1.11.[3] However, De Caso may opine as to whether Defendant violated industry standards on slip resistance, which are not legal conclusions.

In sum, De Caso is permitted to offer his underlying opinions on slip resistance without framing them as legal conclusions or using legal terms, but he is not permitted to offer his opinion on Defendant's notice.

---

[3] The Court reserves ruling on whether Plaintiff will be permitted to introduce any evidence of prior substantially similar incidents for Defendant's Motion *in Limine*, ECF No. [41].

**B. Warning Signs**

Defendant next challenges De Caso's opinion on the adequacy of warnings signs. *See* ECF No. [42] at 3-5. Defendant argues that De Caso is not an expert in warning signs and is thus not qualified to opine on warning signs. *See id.* at 4. Defendant also argues that De Caso's opinion on warning signs is not the result of any applied scientific methodology and is therefore unreliable. *See id.* at 4-5. Finally, Defendant avers that De Caso's opinion on warning signs will "not assist the trier of fact." *Id.* at 4.

Plaintiff responds that although De Caso did not explicitly address the adequacy of the placement of warning signs in his expert report, various engineering standards he cited in his expert report address the adequacy of warning signs, such as ASTM and ANSI. *See* ECF No. [48] at 4 (citing ECF No. [42-2] at 89-91). Therefore, Plaintiff argues that De Caso, as an engineering expert, is qualified to opine on recognized engineering standards, including ASTM and ANSI standards that pertain to warning signs. *See id.*

Defendant replies that none of the subsections pertaining to the relevant ASTM and ANSI standards are cited in De Caso's expert report. *See* ECF No. [49] at 2-3. Defendant further argues that De Caso himself conceded during his deposition that his expert report does not discuss the adequacy of any warning signs. *See* ECF No. [42-2] at 23 ("Q: Okay. But, none or your conclusions in your report mention the location of the caution sign at the time of Ms. Carr's incident, do they? A. They do not, no.").

The Court agrees with Defendant. As De Caso concedes, his expert report does not discuss the adequacy of warning signs. *See generally* ECF No. [42-1]. De Caso's opinion on the adequacy of warning signs is impermissible for this reason alone. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring expert reports to contain "a complete statement of all opinions the witness will

express"). Further, as Defendant correctly argues, De Caso fails to explain what analysis he conducted, if any, to arrive at his conclusion regarding the adequacy of warning signs. His report does not discuss the application of any subsection of any relevant engineering standard to arrive at his conclusion. This also warrants the exclusion of De Caso's opinion on warning signs. *See Frazier*, 387 F.3d at 1261-62.

As such, De Caso is not permitted to opine on the adequacy of warning signs.[4]

### C. Housekeeping Bucket

Defendant next challenges De Caso's opinion that the housekeeping bucket was not placed in accordance with Defendant's housekeeping procedure during his post-incident inspection. *See* ECF No. [42] at 4. Defendant argues that De Caso is not an expert in housekeeping and is thus not qualified to opine on warning signs. *See id*. Defendant also argues that De Caso's opinion on the matter did not use any technical methodology and is therefore unreliable. *See id.* at 4-5. Finally, Defendant submits that Plaintiff "has not established a foundation for De Caso to testify on housekeeping procedure, so such testimony would not assist the trier of fact and only confuse the jury." *Id.* at 4.

Plaintiff responds that De Caso should be permitted to comment on Defendant's own internal procedures, but does not meaningfully address Defendant's arguments on this matter. *See* ECF No. [48] at 5.

The Court agrees with Defendant. As the Court noted above, an expert's qualifications do not need to be narrowly tailored to the precise circumstances of the case. *See J.G.*, 2013 WL 752697, at *3 (merely "because [the expert's] experience does not precisely match the matter at hand" does not render the expert unqualified) (citations omitted). An expert may "testify regarding

---

[4] Given the Court's determination, the Court need not address Defendant's arguments regarding De Caso's qualifications and helpfulness on this matter.

narrow sub-topics within his broader expertise – notwithstanding a lack of specific experience with the narrower area – as long as his testimony would still assist a trier of fact." *Remington v. Newbridge Secs. Corp.*, No. 13-60384-CIV, 2014 WL 505153, at *4 (S.D. Fla. Feb. 7, 2014) (citation omitted).

Here, De Caso's expertise is in "civil and structural engineering; built-environment and infrastructure materials; durability and again of materials; structural evaluation; an array of design requirements related to: lighting/illuminance, acoustic transmission, and energy; failure analysis; planning, building code compliance, standards and specifications; health and safety matters; work safety; pedestrian safety; surface slip resistance; quality control processes and systems; as well as human factors associated to pedestrian safety." ECF No. [42-1] at 4. His expertise in such matters does not relate to housekeeping matters, and housekeeping cannot be considered a "narrow sub-topic" within De Caso's broader expertise. *Remington*, 2014 WL 505153, at *4. As such, De Caso is not qualified to opine on this matter.

Even if the Court were to determine the De Caso is qualified to opine on this matter, a single misplaced housekeeping bucket that De Caso discovered during his inspection, which took place years after the incident, does not shed light on any relevant issue in this case. As such, De Caso's opinion on the misplaced housekeeping bucket will not be helpful to the jury. Further, to the extent that Plaintiff relies on *Holley*, 2021 WL 5371507, at *9 ("Mr. Fore may opine as to whether Defendant violated Defendant's own safety standards and industry standards, which are not legal conclusions and beyond the expertise of an average lay juror."), the Court is not persuaded.[5] The pincite and quotation from *Holley* pertain to this Court's ruling regarding the

---

[5] Plaintiff refers to the case as "*Gauntlett v. Carnival Corp.*" but Westlaw refers to the case as "*Holley v. Carnival Corp.*" The Court refers to the case based on its Westlaw styling. *See* ECF No. [48] at 5 (citing "*Gauntlett*").

10

admissibility of legal conclusions, which does not meaningfully address whether De Caso can opine on the existence of a temporary tripping hazard years after the incident in question. *See id.*

As such, De Caso is not permitted to opine on the misplaced housekeeping bucket.[6]

### D. Potential Contaminants

As a final note, Defendant raises for the first time in the Reply that De Caso's opinions and testimony on "potential contaminants" are unreliable, speculative, will confuse the trier of fact, and should be excluded. *See* ECF No. [49] at 3-4. The list of potential contaminants raised for the first time in the Reply include the "overhead sprinkler[,]" "potential contaminants from the Lucky Bowl restaurant[,]" and "water from the open style washing basin sink . . . crew delivering food/drinks; beverages/water/ice from the beverage station; [and] condiments from the coffee condiment area[.]" *Id.* at 4 (quoting ECF No. [42-1] at 16). The Court notes that it is improper to raise an argument for the first time in a reply, and the Court need not consider such arguments. *See, e.g.*, *Herring v. Secretary, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks and citations omitted); *Willis v. DHL Global Customer Sols. (USA), Inc.*, No. 10-62464-CIV, 2011 WL 4737909, at *3 (S.D. Fla. Oct. 07, 2011) (collecting cases stating that it is inappropriate to raise new arguments in a reply brief and stating that courts in this District generally do not consider these arguments).

As such, the Court foregoes consideration of Defendant's argument regarding potential contaminants raised for the first time in the Reply. Defendant may, however, raise the relevance of potential contaminants at trial, to the extent necessary, so that the Court can address questions of foundation, relevancy, and potential prejudice in the proper context.

---

[6] Given the Court's determination, the Court need not address Defendant's argument with respect to De Caso's reliability on this matter.

11


Case No. 21-cv-20113-BLOOM/Otazo-Reyes

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [42]**, is **GRANTED IN PART AND DENIED IN PART**.

2. De Caso is permitted to offer his underlying opinions on slip resistance without framing them as legal conclusions or using legal terms, but he is not permitted to offer his opinion on Defendant's notice.

3. De Caso is not permitted to opine on the adequacy of warning signs.

4. De Caso is not permitted to opine on the misplaced housekeeping bucket.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 21, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record